# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL MURPHY,<br><br>            Plaintiff,<br>    vs.<br><br>CARMEN FULLBRIGHT, in her individual capacity and as trustee of CARMEN FULLBRIGHT TRUST, and COLDWELL BANKER RESIDENTIAL BROKERAGE,<br><br>            Defendants. | Case No. 12-cv-885-JM (WVG)<br><br>**ORDER DENYING DEFENDANT COLDWELL BANKER'S MOTION TO DISMISS** |

Plaintiff Carol Murphy ("Murphy") filed a first amended complaint ("FAC") on June 20, 2012 against Carmen Fullbright ("Fullbright") and Coldwell Banker Residential Mortgage ("Coldwell Banker") (together "Defendants"). On September 4, 2012, this court granted Coldwell Banker's motion to be dismissed. On October 16, 2012, Murphy filed a second amended complaint ("SAC") against Defendants. Coldwell Banker moved to dismiss itself from the SAC pursuant to Fed. R. Civ. P. 12(b)(6) on October 30, 2012. For the reasons explained below, this court DENIES Coldwell Banker's motion to dismiss.

**I. BACKGROUND**

Murphy is an individual with psychiatric and physical disabilities who receives rental vouchers issued by the San Diego Housing Commission under the federal government's Housing Choice Voucher program. SAC ¶ 4. These rental vouchers are commonly referred to as "Section 8 vouchers." Id.

Fullbright is the trustee of the Carmen Fullbright Trust, which owns the Temecula Apartments and other rental properties. Id. at ¶ 5. Fullbright is also a licensed real estate broker employed by Coldwell Banker. Id. at ¶ 5. Coldwell Banker lists Fullbright as a "Realtor" located at 2727 Shelter Island Drive in San Diego ("Point Loma Office") on its website, www.coldwellbanker.com, and as an "Associate Broker" at the same Point Loma Office on www.californiamoves.com, a website which Coldwell Banker operates. Id. at ¶ 18. Coldwell Banker's Point Loma Office website also includes Fullbright's profile and email address, cfullbright@coldwellbanker.com. Id. The two websites run by Coldwell Banker do not contain any statements denying responsibility for the sale or rental of real estate owned by its real estate agents or other employees. Id. at ¶ 21. Although Fullbright does not appear to have listed her properties on Coldwell Banker's websites, Fullbright used her Coldwell Banker email address, the Point Loma Office, and Coldwell Banker forms when listing and renting her properties through the San Diego County Regional Multiple Listing Service ("Sandicor"), a "multiple listing service" used by San Diego County real estate professionals. Id. at ¶¶ 19-20. Fullbright listed the Temecula Apartments on Sandicor using her Coldwell Banker email address and the Point Loma Office. Id. at ¶ 19.

In July 2011, Murphy saw and responded to an advertisement for the Temecula Apartments posted on the website www.craigslist.com. Id. at ¶ 8. The SAC does not specify whether this advertisement listed Fullbright's Coldwell Banker email address or the Point Loma Office location or whether this advertisement otherwise associated the Temecula Apartments with Coldwell Banker.

On July 21, 2011, Murphy met with the Temecula Apartments' on-site manager. Id. After visiting the Temecula Apartments, Murphy asked whether the owner accepted Section 8 vouchers. Id. at ¶ 9. The on-site manager was unsure and told Murphy to speak directly with

1 Fullbright. Id. Murphy called Fullbright to ask if she accepted Section 8 vouchers, and
2 Fullbright responded that she would consider renting to Murphy. Id. at ¶ 11.

3 Around July 27, 2011, Murphy and Fullbright met at Coldwell Banker's Point Loma
4 Office regarding her rental application. Id. at ¶ 13. At the meeting, Fullbright asked Murphy
5 about her disability even though she knew "she was not supposed to ask." Id. at ¶ 14. Murphy
6 replied that she had anxiety and depression problems along with physical problems. Id.
7 Fullbright then declined to rent a Temecula Apartment to Murphy, explaining that she believed
8 most people receiving Section 8 vouchers were disabled and did not want to rent to anyone who
9 had "a mental impairment or emotional problems." Id. at ¶¶ 15-16.

10 Murphy alleges that Fullbright's rejection of her rental application for the Temecula
11 Apartments was a violation of (1) the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et*
12 *seq*.; (2) California's Fair Employment and Housing Act ("FEHA"), Govt. Code §§ 12955 *et*
13 *seq*.; (3) the Unruh Civil Rights Act ("UCRA"), Civil Code §§ 51 *et seq*.; and (4) the Disabled
14 Person's Act ("DPA"), Civil Code §§ 54, 54.1 and 54.3. Id. at ¶¶ 32-52. Murphy further alleges
15 that the Defendants were negligent when they violated their duty to operate the Temecula
16 Apartments without discriminating against disabled persons. Id. at ¶¶ 53-55.

17 **IV. COLDWELL BANKER MOTION TO DISMISS**
18 **A. Legal Standard**
19 A Fed. R. Civ. P. 12(b)(6) motion to dismiss challenges the legal sufficiency of the
20 pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the
21 court must construe the pleadings in the light most favorable to the non-moving party, accepting
22 as true all material allegations in the complaint and any reasonable inferences drawn therefrom.
23 See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While a Rule 12(b)(6)
24 dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963,
25 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant Rule 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B. Discussion**

Murphy's theories of liability for Coldwell Banker are based on Fullbright being either Coldwell Banker's actual or ostensible agent. Each theory of liability is discussed in turn.

**1. Actual Agency**

Under California agency law and its respondeat superior doctrine, an employer is vicariously liable for risks broadly undertaken by an employee on behalf of an employer.[1] See Jacobus v. Krambo Corp., 78 Cal. App. 4th 1096, 1101 (2000); Bailey v. Filco, Inc., 48 Cal. App. 4th 1552, 1558-59 (1996). An employer is not responsible for an employee's tortious conduct when the employee is acting outside the scope of employment. See Baptist v. Robinson, 143 Cal. App. 4th 151, 161-62 (2006). However, "respondeat superior is inapplicable when a principal does not have the right to control the actions of the agent that makes the relationship between principal and agent performing the service one of employment as defined in § 7.07(3)." Restatement (Third) of Agency § 2.04, cmt. b. Determining whether a tort was committed within the scope of employment is a question of fact. Id. Federal law similarly applies agency law and vicarious liability principles to liability under federal statutes. See Meyer v. Holley, 537 U.S. 280, 285-86 (2003) ("And the Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules . . . ."); Restatement (Third) of Agency § 2.04 ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). To establish vicarious

---

[1] Four of the Plaintiff's five claims are based on California law: FEHA, UCRA, DPA, and Negligence. The fifth claim is based on the FHA.

liability under either state or federal law, Murphy must plead facts sufficient to suggest that Fullbright was acting as Coldwell Banker's employee when she refused to rent a Temecula Apartment to her.

In its motion to dismiss, Coldwell Banker argues that the SAC fails to allege that Fullbright was Coldwell Banker's actual agent for the purpose of renting and managing the Temecula Apartments. MTD at 2. While Coldwell Banker acknowledges that Fullbright was its employee at the time of the tortious conduct, it asserts that she had no actual authority on behalf of Coldwell Banker regarding the Temecula Apartments. MTD at 6. To prove that Fullbright solely owned the Temecula Apartments, Coldwell Banker previously submitted a copy of the Temecula Apartment's Certified Trust Transfer Deed and a Certified Grant Deed, both in Fullbright's name. Dkt. 23, Exs. A & B. The court took judicial notice of these documents when it previously dismissed Murphy's claims against Fullbright. As Fullbright's renting of the Temecula Apartments was for her own personal purposes and not for its benefit, Coldwell Banker concludes that Murphy's actual agency theory fails.

But Murphy now alleges "it is standard industry practice for real estate brokerages and their agents to have agreements or office policies and procedures that govern an agent's sale or rental of property they personally own." Id. ¶ 22. Murphy asserts that one such standard practice is for real estate agents to list all sales and rentals under their brokerage's name. Id. Murphy therefore believes that Fullbright was Coldwell Banker's actual agent for the Temecula Apartments. To this end, Murphy requests an opportunity to conduct discovery of the contractual terms between Fullbright and Coldwell Banker. Opp. to MTD at 10.

These new allegations suggest that Coldwell Banker may have, in fact, instituted a policy establishing actual agency between Fullbright and Coldwell Banker regarding the Temecula Apartments. If Coldwell Banker required its employees to associate Coldwell Banker with their private listings, then doing so would fall within the scope of their employment. By extension,

Coldwell Banker could institute policies controlling how its employees rent their private properties. Accordingly, Murphy's claims against Coldwell Banker survive Coldwell Banker's motion to dismiss under an actual agency theory.

### 2. Ostensible Agency

Alternatively, Murphy believes that Coldwell Banker can be held liable because Fullbright was Coldwell Banker's apparent or ostensible agent.[2] An agent has apparent or ostensible authority "when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300; Restatement (Third) of Agency § 2.03 ("The power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestation."). Apparent agency may also result from the principal's negligent omission or his acquiescence in the agent's activities. C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000); Lux Art Van Serv., Inc. v. Pollard, 344 F.2d 883, 888 (9th Cir. 1965); Kaplan v. Coldwell Banker Residential Affiliates, Inc., 59 Cal. App. 4th 741, 747 (1997) (holding Coldwell Banker liable under an ostensible agency theory for franchisee's actions); see also Restatement (Third) of Agency § 3.03, cmt. b ("A principal's inaction creates apparent authority when it provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions."). If apparent or ostensible authority exists, the third person "has the same rights with reference to the principal as where the agent is authorized." Restatement (Third) of Agency § 8, cmt. a.

Murphy claims that brokerages require their agents to list sales or rentals of their personal property through the brokerage without disclaiming any association with the brokerage in those dealings, thereby giving the appearance that these brokerages are responsible for these listings.

---

[2] Under the California Code, apparent authority is instead referred to as "ostensible authority."

SAC ¶ 23.  Murphy further alleges that Fullbright placed her listing on Sandicor's website and identified Coldwell Banker as the listing office and herself as the listing agent.  Opp. to MTD at 13.  Notably, Murphy's SAC only states facts indicating that Fullbright affirmatively held out Coldwell Banker as being associated with the listing on Sandicor's website.  Murphy does not even plead that the Temecula Apartments were listed on Coldwell Banker's websites such that it might have had notice that Fullbright was holding herself out as its agent for the Temecula Apartments and therefore had the ability to disavow Fullbright's alleged misrepresentations.

Nevertheless, Murphy's theory survives because she has pled that Coldwell Banker required Fullbright to associate her private listings with Coldwell Banker.  Similar reason was adopted in Kaplan v. Coldwell Banker Residential Affiliates, Inc., 59 Cal. App. 4th 741 (1997).  In that case, the defendant real estate broker independently owned and operated his real estate office, Coldwell Banker Citrus Valley Realtors, pursuant to a franchise agreement that "required [the defendant] to hold himself out to the public as 'an independently owned and operated member of Coldwell Banker Residential Affiliates, Inc.'").  Id. at 744.  The Kaplan court explained that requiring the defendant to use the Coldwell Banker name was to take advantage of the "venerable name, Coldwell Banker, the advertising campaign, the logo, and the use of the word 'member' . . . to bring customers into Coldwell Banker franchises."  If Plaintiff's allegations are true, then ostensible agency might exist.

## V. CONCLUSION

For the aforementioned reasons, Coldwell Banker's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

DATED: December 18, 2012

Jeffrey T. Miller
United States District Judge

7